## Louisville & Nashville Railroad Company v. Central Kentucky Traction Company, and Frankfort & Versailles Traction Company.

(Decided March 13, 1912.)

### Appeal from Franklin Circuit Court.

Voluntarily Paying Debt of Another—No Recovery Can Be Had Therefor.—As a general proposition one who voluntarily pays for another a debt or obligation owed by the other, without the request of that other, or who expends money on account of another without the consent of that other, cannot recover the money laid out, and this upon the principle that no man can of his own volition make another his debtor.

McQUOWN & BECKHAM for appellant.

HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE WINN—Reversing.

On July 25, 1893, the appellant Railroad Company and the Capital Railway Company entered into the following contracts:

"WHEREAS, The Capital Railway Company of Frankfort wishes to cross with its street-car railway, the main track of the Louisville & Nashville Railroad at Ann street, in the city of Frankfort, Ky., and

"WHEREAS, The Louisville & Nashville Railroad Company has consented that said Capital Railway Company may make said crossing upon the terms and conditions set forth herein, to-wit:

"NOW, THEREFORE, This contract, made and entered into this 25th day of July, 1893, by and between the Capital Railway Company of Frankfort, Ky., and the Louisville & Nashville Railroad Company,

"WITNESSETH: That the said Louisville & Nashville Railroad Company consents that said Capital Railway Company may make said proposed crossing and any additional crossing that may become necessary in consequence of any aditional track or tracks that may be put down by said Louisville & Nashville Railroad Company, parallel with its present track, but said crossings are to be constructed by the Capital Railway Company at its own expense, and without expense, damage or injury to the said the Louisville & Nashville Railroad Company, or its property whatever, and are to be constructed in such a manner and are to be of such character as to make the rails of said The Louisville & Nashville Railroad Company continuous over the crossings; and this permission is given upon the express condition that said Capital Railway Company is to construct and maintain said crossings free of expense to said The Louisville & Nashville Railroad Company; and in the event the said Capital Railway Company shall at any time fail or refuse to maintain said crossings at its own expense, as herein provided for, then, and in that event, said the Louisville & Nashville Railroad Company may take up and remove all such crossings as the said Capital Railway Company, its successors or assigns, may have put down or constructed, or the Louisville & Nashville Railroad Company may, if it chose to do so, furnish the necessary labor and material and repair and put in order said crossings at the expense of said Capital Railway Company, its successors or assigns, and the Capital Railway Company hereby agrees that it, its successors or assigns, shall pay the actual cost thereof.

"And this permission is given upon the further condition that the trains of said The Louisville & Nashville Railroad Company shall have precedence over the crossings. Said Capital Railway Company hereby agrees that all of its cars shall be stopped before passing over the crossings, and its motormen, drivers, conductors, or other employes, shall see that the track is clear before crossing.

"And said Capital Railway Company shall be liable for all damages to people or of property by reason of the

failure of its employes to stop its cars and see that the track is clear before passing over the crossings.

"It is further agreed that, if any overhead wires are erected by, or for, the said Capital Railway Company, such wires shall be at least twenty-two (22) feet above the top of the rail or tracks of said The Louisville & Nashville Railroad Company.

"All such crossings shall be made according to plans submitted to, and approved by, the Chief Engineer of the Louisville & Nashville Railroad Company.

"The Louisville & Nashville Railroad Company hereby expressly reserves the right at any time to lay such additional track or tracks parallel with its present tracks, or approximately parallel thereto, where the same is hereby authorized to be crossed by the said Capital Railway Company, as it may from time to time deem necessary.

"Witness the signature of the parties, the date and year first herein written.

"CAPITAL RAILWAY COMPANY,

"By PAT McDONALD,

"President.

"THE LOUISVILLE & NASHVILLE RAILROAD CO.,

"By J. G. METCALFE,

"General Manager."

It appears that there was at the time only one track of the appellant company at the point of intersection named in the contract. It further appears that the railroad company, having built a new passenger station in Frankfort, found it necessary to lay an additional parallel track, and to grade and reconstruct the track named above. It thereupon presented the contract of 1893 to the appellees and requested them to cause the crossings over the two tracks to be built at the expense of the appellees. Upon the failure by the appellees to construct them, the railroad company built them, and brought its action to recover the cost. By consent of the parties the action was transferred to equity. Upon a submission the petition was dismissed, and the Louisville & Nashville Company appeals.

Several questions are presented by the record. The first one is whether the appellee companies are bound by the original contract made with the Capital Railway Company. Its answer demands an examination of the connection or derivate relation of the companies. It

appears that the Capital Railway Company, under the contract supra, bore the cost of the crossing put down about the time the contract was made. Mr. John T. Buckley was the General Manager of the Capital Railway Company. He testified that his company was to put in and keep up the crossing. In 1894 the Capital Traction Company went into a receiver's hands, and was operated by him for a time. It was sold under foreclosure proceedings in the United States Circuit Court, and conveyed by its commissioner, by deed of date June 23, 1898, to a corporation known as the Frankfort and Suburban Railway Company. Of this concern Mr. Buckley was also General Manager, as well as its Secretary and Treasurer. Among the properties conveyed by the deed were the old company's right of way, equipment, privileges, rights, appendages, and appurtenances. No mention was made of the contract, supra; but Mr. Buckley was the general manager of both companies; and as to the rights of third parties, his knowledge was the knowledge of the purchasing company. The contract right owned by the Capital Railway Company to operate its line across the Louisville & Nashville track passed by the deed named, although there was no specific mention of it in the deed. Hammonds v. Eads, 146 Ky., 162, Conley v. Fairchild, 142 Ky., 271. And since it had knowledge of the terms under which the right arose, it was bound to exercise the right, if exercised at all, under the obligations imposed by that contract. Having knowledge of the obligation imposed by that contract, it should, in good conscience, use no right gained under it, save by performing its obligation. So far, then, the Frankfort and Suburban Railway Company stood in the shoes of the Capital Railway Company.

The Frankfort and Suburban Company operated until December, 1902, when it failed. It shut down operations and its tracks were covered over by the city of Frankfort with macadam. The crossing was taken up by the railroad company. In 1903 the Frankfort & Versailles Traction Company was organized. Mr. Buckley was a stockholder, secretary, and a little later, general manager of the new company. On December 28, 1903, the Frankfort and Suburban Company conveyed its properties to the new company. The deed conveyed "the entire holdings of real and personal property, corporate and incorporate, tangible and in-

tangible, franchises, rights of way and all species and estates of every kind and description," which, of course, included the right to cross the railroad track. And again, since through its manager, the new company had knowledge of the obligation imposed as a condition to the right, it, using the right, had to perform the obligation. But there is a stronger factor against it. On December 13, 1903, the Frankfort & Versailles Company, through Mr. Buckley, wrote the appellant, desiring that a new crossing be put in at the Traction Company's expense. On December 21st, the Railroad Superintendent replied, and among other things, said: "I also send you a copy of the contract between this company and the Capital Railway Company, dated July 25, 1893." In one of his letters about the matter Mr. Buckley wrote that at the time of the removal he asked that the crossing be left alone "as our company was about to change hands." Following this correspondence, and the receipt of the copy of the contract, the new crossing was put in in March, 1904. Certainly the contract was sent to it as a part of the understanding about the putting in of the new crossing; and when Mr. Buckley, for both companies, had had the matter in charge and in mind, the new company in using the rights must be held to owe the obligation. That it so recognized it is evident from the fact that it paid the expense of installing this crossing.

The Central Kentucky Traction Company, the appellee, later, by merger, took over the property of the Frankfort & Versailles Traction Company—at least in an amended petition filed upon September 20, 1909, it was charged that the Central Kentucky Company had acquired a right, title and interest in and to the property of the Frankfort & Versailles Company; and that both of said companies were the successors and assigns of the Capital Railway Company and the Frankfort and Suburban Railway Company. The relationship of the two corporations was not denied in the reply. The principal defense was made by the Central Kentucky Traction Company; the Frankfort & Versailles Company having filed its answer in which it set up that it had no real interest in the controversy, was operating no railroad, and was no longer a going concern. There is in the record, marked "Tendered" a copy of the agreement, properly authenticated, whereby the Frankfort & Versailles Company was merged into

the Central Kentucky Company; but the order tender-
ing it shows that the court took time to consider it; and
the case proceeded to judgment without any further
order in respect to it. We are of opinion, however, that
the pleadings sufficiently admit the merger. The Cen-
tral Kentucky Traction Company became liable thereby
for all the liabilities and contract obligations of the
Frankfort & Versailles Company. "Where one corpora-
tion goes entirely out of existence by being annexed to
or merged into another corporation, if no arrangements
are made respecting the property and liabilities of the
corporation that ceases to exist, the surviving corpora-
tion will be entitled to all the properties and answerable
for all the liabilities of the other. The liabilities of the
old corporation are enforceable against the new one in
the same way as if no change had been made." Thomp-
son on Corporations, section 372. The text is adopted
in Louisville & Nashville Railroad Co. v. Riddell, 112
Ky., 494.

From the foregoing it will be seen that in so far as
the rights and obligations under the original contract
are concerned the Central Kentucky Traction Company
is as much entitled to enjoy the rights as was the origi-
nal Capital Railway Company; and it just as much owes
the duty to discharge the other side of that contract as
did the Capital Railway Company. This position is not
in the least affected by the fact that a new franchise was
granted by the city of Frankfort in 1903 to the Frank-
fort & Versailles Traction Company; for while a fran-
chise was necessary to permit any one of the sundry
companies to operate a street railway system in Frank-
fort, that franchise has naught to do with the contract
rights and contract obligations imposed under the con-
tract before us. The Capital Railway Company, in the
beginning, saw fit to make it a matter of contract with
the Louisville & Nashville Road, rather than to exer-
cise any legal effort to force the right. Having made
it a matter of contract, it and its successors and assigns
are bound by it.

It remains to be seen whether the contract itself ap-
plies to the two crossings which were put down after
the building of the new station. The contract is not as
clear as it might be. Its preamble recites that the Capi-
tal Company desired to cross the main track of the
Louisville & Nashville Road at the intersection named;
that the Louisville & Nashville Road had consented that

said crossing might be made. The body of the contract then recites that the consent is given to make said cross-ing, and any additional crossings that might become nec-essary in consequence of additional railroad tracks, on condition that said crossings were to be constructed by the Capital Company at its own expense, and upon the further condition that the Capital Company was to con-struct and maintain such crossings free of expense to the Louisville & Nashville Company. It is argued by appellees that the additional crossings then contem-plated were to be such crossings as might be over any additional tracks laid by the Louisville & Nashville Com-pany before any original crossing work was done. The railroad company, on the other hand, argues that the in-tention of the contract was to embrace their construction at the expense of the Capital Company or its successors, over such additional track or tracks as might be laid down by the railroad company in future years. No light is thrown upon this matter of construction by any testimony in the record. We do find, however, a strong argument in the surrounding circumstances and facts existing at the time. It was recognized by the parties that the contract contemplated an immediate construc-tion of a crossing as the line of the Louisville & Nash-ville Road then existed. As a matter of fact, the con-tract was made in the latter part of July, 1893, and the crossing named was made sometime later in that year. Had it been in contemplation of the parties that ad-ditional tracks were to be built by the railroad company during that year some recital of such purpose doubtless would have appeared in the contract. The railroad com-pany reserved to itself the right at any time to lay addi-tional tracks whenever it from time to time might deem them necessary. It seems clear from these provisions in the contract and from the surrounding circumstances, that the additional crossings named in the contract con-templated crossings over such additional tracks as the railroad company might construct through the future years.

It is further argued for appellees that the contract gave no right to the railroad company to do the original construction of such crossings, with the consequent right to look to the street railway company for the cost; and that the provision in the contract, whereby the railroad company might do the work itself, extended only to the maintenance, repairing and putting in order of the

crossings. The petition, however, alleges that the railroad company, after it had put in the new track and changed the grade of the old one, presented the contract of 1893 to the appellees and requested them to cause the crossings to be made at their own expense, but that they failed and refused so to do; and that, thereupon, the plaintiff provided the material and labor, and constructed the crossings. The fact that the request was made and the contract presented is not denied. As a general proposition, one who voluntarily pays for another a debt or obligation owed by the other, without the request of that other, or who expends money on account of another, without the consent of that other, can not recover the money laid out; and this upon the principle that no man can of his own volition make another his debtor. We do not think that this case comes within that rule. The railroad company was bound to continue to operate its trains as a common carrier, across this intersection. It realized that the traction company as well as a common carrier, was operating its cars across the intersection. The railroad company knew that within reason it could not so alter the physical condition of the properties at the point of intersection as to stop the safe and prudent operation of both lines at this point. It, therefore, had to act promptly. The traction company, owing it the correlative duty, declined to act. Nor do we think the narrow construction put upon the contract by the appellees in this aspect is correct. The right of the railroad company to furnish the necessary labor and material and to put in order the crossings, at the expense of the street railway company, its successors or assigns, as provided in the contract, is given to it when the street railway company should fail or refuse to maintain the crossings at its own expense; and its failure to put in the new crossings when the conditions arose demanding them was a failure upon the part of the street railway company to maintain the existing condition of a crossing there.

For the reasons given the judgment of the trial court is reversed, with directions to enter judgment in favor of the appellant against the Central Kentucky Traction Company for the sum of $548.65, with interest from the time of the filing of the petition.