[L. A. No. 7065.  In Bank.—March 14, 1922.]

BLUE DIAMOND PLASTER CO. (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, etc., et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — DEATH OF EMPLOYEE — UNGUARDED APPLIANCES—SERIOUS AND WILLFUL MISCONDUCT OF EMPLOYER—INCREASE OF AWARD—EVIDENCE.—Under section 6b of the Workmen's Compensation Act, an employer may be penalized by the increase of an award for the death of an employee by reason of serious and willful misconduct in permitting certain apparatus to remain exposed and unguarded by reason of which the employee was killed, although the employer had purchased the plant but a short time before the accident, where it appears that in addition to the opportunity of the employer, through its general manager, to have gained knowledge of the unguarded and dangerous condition of its appliances, certain other of its officers, who were employed by the former owner of the plant, were at all times aware of the unguarded condition of the appliances, and also had knowledge of the terms of the general safety orders of the Industrial Accident Commission and of its express and repeated directions given to them, as the executive and managing officers of the former owner, as to safeguarding of the appliances.

[2] AGENCY — CORPORATIONS — MANAGING OFFICIALS — NOTICE. — The knowledge which a managing official of a corporation gained as to certain facts and conditions while a like official of the predecessor of said corporation is imputable to the latter.

APPLICATION for a Writ of Certiorari to review an order of the Industrial Accident Commission awarding compensation for death.  Award affirmed.

The facts are stated in the opinion of the court.

Black, Hammack & Black for Petitioner.

A. E. Graupner and W. H. Pillsbury for Respondents.

1. "Serious and willful misconduct" of employer as affecting recovery under Workmen's Compensation Act, notes, Ann. Cas. 1916A, 790, 16 A. L. R. 620.

2. Imputability to corporation of officer's knowledge acquired as officer of another corporation, note, Ann. Cas. 1915A, 861.

THE COURT.—The petitioner in this proceeding seeks to have an award of the Industrial Accident Commission reviewed and annulled. The proceeding before the commission in which said award was made arose out of the following facts: Donald M. Wallace, who was an employee of the Blue Diamond Plaster Company, was killed on or about December 20, 1920, at the plant of said corporation at or near Corona, California, by coming into contact with an unguarded belt and pulley which were being operated at the time in the hoist-house at said plant in connection with machinery for the hoisting of supplies and materials from the railroad tracks to the quarry levels and various floor levels of the plant and also for the operation of a compressor therein. The machinery in this hoist-house was in use regularly, though not constantly, in connection with the operation of the plant, and was set in motion and stopped by means of a clutch or controller which was located on one side of, and about twelve inches from, the belt, and which manipulators of the hoist could make use of either by going around the belt to the side on which the controller was placed or, as was more conveniently and frequently, if not customarily, done, by reaching over the belt a distance of some twenty-two inches to the handle of the controller.

The deceased employee, Donald M. Wallace, while not regularly in charge of the hoist, did from time to time operate its machinery in connection with his other duties as occasion required, with the knowledge of the employer, and was engaged in so doing at the time of his death, which was occasioned by his being caught and crushed between the belt and the pulley. There was no witness to the casualty, and hence the exact manner in which he was thus caught and crushed was not known.

In the proceeding instituted by the widow of the deceased claiming an award, it was asserted that the belt and pulley which were the immediate cause of the casualty were exposed and unguarded, in violation of the duty which the employer owed to its employees and in further and express and willful violation of the safety rules and orders of the Industrial Accident Commission, and that the same constituted serious and willful misconduct on the part of the employer. Upon the hearing before the commission it sustained this claim on

the part of said applicant in its findings to the effect that the maintenance of said unguarded pulley and belt by the employer was in direct and open violation of the provisions of sections 33, 34, and 35 of the Workmen's Compensation Act of 1917, and was also in violation of certain general safety orders of the commission which were in full force and effect at the time of said casualty, and that the said violation of said act and orders constituted serious and willful misconduct on the part of said employer and was the proximate cause of said casualty. The commission accordingly held that the applicant was entitled to have an award in the way of a death benefit payable by reason of the injury to and death of the deceased employee, and was also entitled to have said award increased one-half under section 6b of the Workmen's Compensation Act, by reason of the fact that the injury to and death of said employee had been proximately caused through the serious and willful misconduct of the employer, said increase to be paid by such employer and not by the insurance carrier. From the award as thus made and increased the employer, after denial of its application for a rehearing before the commission, has presented this petition for a writ of review and for an order for the annulment of said award.

The particular portion of said award which is assailed in this proceeding is that portion thereof wherein the petitioner is penalized for serious and willful misconduct in relation to the injury to and death of its said employee. It is here contended that the evidence educed before the commission fails to show the existence of any willful or serious misconduct on the part of said petitioner in relation to the producing cause of said casualty. The record before us does not, in our opinion, sustain this contention. The following facts were educed before the commission: Prior to September 1, 1920, the rock-crushing plant of the petitioner herein was owned and operated by the Temescal Rock Company, of which Mr. C. H. Haines was the superintendent and Mr. John Schreiner was general manager of production. While said plant was thus owned and operated, it was at various times visited and inspected by safety inspectors of the Industrial Accident Commission. These inspections began in the year 1916, the first of these occurring on July 21st of that year, and in which the safety inspector of the commis-

sion found the plant to be dangerous and unsafe in six particulars, three of these being with respect to unguarded belts. Notification of these specific defects was sent by the commission to Mr. John Schreiner, general manager of production of the plant, on August 17, 1916. On March 6, 1917, another official inspection was had, and the plant was again found to be in a dangerous and unsafe condition in respect to unguarded belts, and the notification sent by the commission to Mr. C. H. Haines, the superintendent of the plant, specified six requirements for safeguarding belts and pulleys in the plant. On April 18, 1918, another official inspection, this time in company with Superintendent Haines, was made, and the plant was found to be in a dangerous and unsafe condition in fourteen particulars, four of which related to unguarded belts and pulleys. On May 24, 1919, the plant was again inspected, and a list of requirements for correction sent to Superintendent Haines, in which was included ''complete installation of safeguards.'' The particular belt and pulley in contact with which Wallace met his death was not installed until after this last inspection, but it may not be, and in fact is not, denied that both C. H. Haines, as superintendent, and John Schreiner, as manager of production, of said plant while the same was in the possession and ownership of the Temescal Rock Company, knew fully what were the requirements and directions of the Industrial Accident Commission with regard to the dangerous nature and unsafety of unguarded belts and pulleys in direct relation to the operation of said plant. In addition to this showing, it appeared that, accompanying the notification sent to the said manager of the Temescal Rock Company in 1916, were copies of the general safety orders of the commission having special reference to quarry operations and to the safeguarding of belts and pulleys therein.

On September 1, 1920, the Blue Diamond Plaster Company, a corporation and the petitioner herein, purchased and took over from the Temescal Rock Company the plant in question, and thereafter continued to operate the same and was so doing at the time of the injury to and death of its said employee; and in so doing it retained and continued said C. H. Haines and John Schreiner in their former positions as the superintendent and manager, respectively, of said rock-crushing plant, and they held and were holding

said positions up to and at the time of the injury to and death of said Wallace. It is in evidence that soon after the petitioner's purchase of said plant the general manager of the corporation, Mr. Hay, went over the said plant and after doing so gave general instructions to its superintendent, Mr. Haines, with respect to safety appliances, and that he also instructed Mr. Pratt, the insurance broker who placed the insurance both as to fire and casualty upon the plant, to have an inspection thereof made with a view to compliance with all legal requirements as to safety devices; but the record shows that Mr. Hay did not follow up his suggestions either to the superintendent or to the insurance broker to the extent of seeing to it that the safety appliances were provided or such inspection made. The result was that the belt and pulley in the hoist-house which caused the death of Wallace were left unguarded between the time when the petitioner acquired said plant and the date and occasion of the death of the employee. Had the Temescal Rock Company continued to be the owner and operator of the plant in question down to and including the time and event of said casualty, we entertain no doubt that it would have been liable to an award not only for the death of its said employee but also for the increase in the death benefit thus awarded provided for in section 6b of the Workmen's Compensation Act.

The facts of this case as above recited present an even stronger reason for the application of said section than were presented in the case of *E. Clemens Horst Co.* v. *Industrial Acc. Com.*, 184 Cal. 180 [16 A. L. R. 611, 193 Pac. 105], wherein it was held that the failure to comply with the general safety orders of the commission with respect to the safeguarding of shafting which the employer knew or should have known to be unsafe would constitute such serious and willful misconduct on the part of the employer as to justify the increase in an award provided for in said section of the Workmen's Compensation Act. [1] The petitioner herein, however, contends that, conceding that such would have been a proper application of the terms of said section to the Temescal Rock Company had it continued to be the owner of the plant in question up to the time of said casualty, there was not sufficient evidence before the commission to justify its application to the petitioner herein as the purchaser of said plant a short while before the accident which caused

the death of said employee. The Blue Diamond Plaster
Company purchased and took over the said plant from the
Temescal Rock Company on September 1, 1920. The injury
to and death of its said employee occurred on December 20,
1920, a little less than four months later. When the peti-
tioner took over said plant and continued the operation
thereof it retained in its employ in their former positions
of superintendent and manager of production, respectively,
Mr. C. H. Haines and Mr. John Schreiner, and these two
executive and managing officers of the corporation were in-
vested with the general conduct and control of said plant
during the interval between the date of its purchase by the
petitioner and the injury to and death of said employee.
The evidence educed before the commission further showed
that Mr. Hay, the general manager of said corporation,
visited and inspected the plant shortly after its purchase,
and in the course of such inspection visited and inspected
the hoist, in connection with the operation of which the un-
guarded belt and pulley, which were admittedly responsible
for the death of said workman, were then installed. In
addition to this evidence of an opportunity on the part of
the petitioner, through its general manager, to have gained
actual knowledge of the unguarded and dangerous condition
of its appliances, there is the evidence, ample in character,
of the previous knowledge of both Haines and Schreiner,
not only of the unguarded condition of the said belt and
pulley, but also of the terms of the general safety orders of
the commission and of its express and repeated directions
given to them, and to each of them, as the executive and
managing officers of the former owner with relation to the
safeguarding of the belts and pulleys of the plant. It is
urged by the petitioner that this knowledge on the part of
these persons, so retained in their positions under the peti-
tioner's ownership of the plant, cannot be imputed to the
petitioner. No authority is cited to sustain this contention
which is at all pertinent to the situation as presented here.
In the case of *Cooke* v. *Mesmer,* 164 Cal. 332, 338 [128 Pac.
917], the rule is thus stated: "While the decided weight
of authority is in favor of the rule that knowledge *possessed*
by an agent while he occupies that relation and is executing
the authority conferred upon him, as to matters within the
scope of his authority, is notice to his principal, *although*

*such knowledge may have been acquired before the agency was created,* it is universally recognized that this rule is subject to the qualification that 'knowledge acquired by an agent before the commencement of the agency is not notice to the principal unless it is shown or appears that knowledge was present in his mind at the time he acted for the principal.' (1 Clark & Skyles on Agency, sec. 482.)''

The element which was noted as lacking in the case above cited in order to the application of the otherwise general rule to its facts is clearly present in the instant case, since the said officials of the petitioner herein both testified that they were at all times aware of the unguarded condition of said belt and pulley, but that they did not consider said condition to be unsafe or dangerous. Their mistake in judgment upon that subject cannot be held to relieve their employer from liability, in view of the other evidence before the commission to the effect that these unguarded appliances were dangerous and unsafe, and of the even more conclusive showing that this employee met his death in the course of his duties through contact with them in their unguarded condition. [2] The following cases from other jurisdictions sustain the determination that the knowledge which a managing official of a corporation gained as to certain facts and conditions while a like official of the predecessor of said corporation is imputable to the latter: *Blue Grass Coal Corp.* v. *Combs,* 168 Ky. 437 [182 S. W. 207]; *Louisville etc. Co.* v. *Central Ky. Tr. Co.,* 147 Ky. 513 [Ann. Cas. 1915A, 857, 144 S. W. 739].

The other contentions of the petitioner have not, in our opinion, sufficient merit to warrant separate consideration.

Order of award affirmed.

Richards, J., *pro tem.,* Wilbur, J., Sloane, J., Lawlor, J., Shurtleff, J., Waste, J., and Shaw, C. J., concurred.