[Civ. No. 5845. Second Appellate District, Division One.—October 19, 1927.]

THE CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS (a Corporation Sole), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and THOMAS P. BARNES, Respondents.

F. Britton McConnell for Petitioner.

G. C. Faulkner for Respondent Commission.

CONREY, P. J.—Petitioner was the employer of one Barnes, who claimed compensation for injuries received, arising out of and in the course of his employment. The principal award, which runs against the employer's insurance carrier, is not questioned here. But the claimant was awarded additional compensation against the employer, upon the ground that the injury was caused by reason of serious and wilful misconduct of the employer. Petitioner

contends that the Commission exceeded its jurisdiction, in the rendition of said award of additional compensation; and particularly, that the evidence did not justify or support the finding of fact that the employee was injured by reason of serious and wilful misconduct of the employer, on the part of an executive or managing officer or general superintendent thereof.

Petitioner, as owner, entered into a contract with Nowell, as architect and contractor, for the construction of a church building. Nowell was to receive a fee of three per cent on the cost of the building. He agreed to construct the house, and to supervise the entire work. In the transactions with Nowell, the Church was represented by the bishop and by one Jensen, chairman of the finance committee of the Church.

If the accident and resulting injury to Barnes were caused by misconduct of anyone, the misconduct was that of one Taylor, who occupied a position in relation to the work, of such description that at least he was foreman in charge of the work in which Barnes was occupied at the time of the accident. Barnes was hired by Taylor. It does not appear whether Taylor's contract of employment came to him through Nowell or through some officer of the Church.

The evidence produced before the Commission is not here, and is not set out in the petition. For the purpose of deciding upon the application for the writ, we assume that the evidence is as stated by counsel for petitioner, together with the supplemental statements of evidence as contained in the answer presented by counsel for respondent Commission.

The provisions of law allowing an increase of compensation, in case of "serious and wilful misconduct" of the employer, are directed against such misconduct on the part of "the employer, or his managing representative," etc., "or if a corporation, on the part of an executive or managing officer or general superintendent thereof." (Workmen's Compensation, Insurance and Safety Act of 1917, sec. 6 (b) [Stats. 1917, p. 834].)

There are, therefore, two propositions upon which petitioner must depend. *First*, that the evidence is not sufficient to warrant the Commission in finding that Taylor was

a "general superintendent" of the corporation, within the meaning of those words as found in the statute. *Second,* if Taylor was such general superintendent, that the evidence is likewise not sufficient to prove that he was guilty of wilful and serious misconduct.

The accident was caused by the breaking of a floor board of a scaffold platform on which Barnes was standing. The scaffold was being put up within the building, and was to be used in further progress of the work. Jensen testified that Taylor was foreman in charge of the construction of the scaffold and in the direction of the work of Barnes, at the time when the plank broke, and was in charge of the construction as well as the work that was carried on upon the platform. Barnes testified that he was hired by Taylor, under whom he was working at the time of the injury.

"Q. Do you know he was an officer of your employer? A. I don't know but I don't think so.

"Q. Who was next over him, if you knew? A. The Church itself, was the way I take it.

" . . . Q. Do you know whether there was a general superintendent over you? A. Nothing but the architect. . . .

"Q. Do you know from whom Mr. Taylor got instructions about the work? A. From the architect. That is what he told me at least. That he followed nobody's instructions but the architect's."

It is further shown by the testimony of Jensen that Taylor hired men to work on the job and was actually present on the job and supervising it; that the contract of Nowell was to prepare the plans and supervise the entire construction, and that Nowell was actively superintending as the work progressed.

"Q. Why do you say he was actively superintending the construction of the church? A. As he was responsible to us for the bids and everything that went into the building and construction of it under his entire jurisdiction. . . .

"Q. And he was to represent your committee and the bishop in superintending it? A. Yes.

"Q. Or placing of the— A. Bids."

It is the contention of respondents that the nature of the supervision to be exercised by Nowell as architect was

different from the supervision that was to be exercised by Taylor in charge of the actual work of construction and of directing men doing the work of construction.

The difficulty in determining the main issue here arose out of the fact that both Nowell and Taylor were described as persons superintending the work of construction. We think, however, that from the testimony the Commission was justified in drawing the inference that the superintendency by Taylor was general in its nature and covered the actual work of construction, and that the superintendency contracted for by Nowell was not of such nature that it excluded such superintendency as was exercised by Taylor or reduced Taylor to the status of a mere foreman bound to obey orders of Nowell. Although Taylor was subject to advice and direction from Nowell, nevertheless Taylor had charge and control of the men engaged in the work. This conclusion is in harmony with certain decisions of the supreme court. In *E. Clemens Horst Co.* v. *Industrial Acc. Com.*, 184 Cal. 180 [16 A. L. R. 611, 193 Pac. 105], the claimant for compensation was an employee of the company, of which Horst was president and general manager. Miller was general superintendent of petitioner's ranches. Conrad was superintendent of the particular plant where the claimant was injured. The misconduct which led to the injury was that of Conrad. The question to be determined was whether or not Conrad was "an executive or managing officer" within the meaning of that phrase as used in the statute. The court said (p. 190): "It seems clear, therefore, that the legislature by this section did not use 'officer' in its technical, legal sense as one who has been elected, or whose office is provided for by the articles of incorporation, or the by-laws, but that by an 'executive or managing officer' was meant a person in the corporation's employ, either elected or appointed, who is invested with the general conduct and control at a particular place of the business of a corporation." In *Blue Diamond Co.* v. *Industrial Acc. Com.*, 188 Cal. 403 [205 Pac. 678], wherein the question at issue related to a liability similar to that sought to be enforced in the present case, one Haines was superintendent of the plant and one Schreiner was manager of production of the company's rock-crushing plant. One Hay was general manager of the corporation. After re-

viewing the facts of the case, the supreme court said: "In addition to this evidence of an opportunity on the part of the petitioner, through its general manager, to have gained actual knowledge of the unguarded and dangerous condition of its appliances, there is the evidence, ample in character, of the previous knowledge of both Haines and Schreiner, not only of the unguarded condition of the said belt and pulley, but also of the terms of the general safety orders of the Commission and of its express and repeated directions given to them, and to each of them, as the executive and managing officers of the former owner with relation to the safeguarding of the belts and pulleys of the plant. It is urged by the petitioner that this knowledge on the part of these persons, so retained in their positions under the petitioner's ownership of the plant, cannot be imputed to the petitioner." This contention apparently was based upon the fact that the knowledge of the persons named respecting said conditions of the plant and said orders was obtained prior to the transfer of the property from a former owner to the petitioner. However, the court declined to sustain this contention, and upon the assumption that these named persons represented the corporation petitioner in conducting the business of the plant, affirmed the award. No distinction appears to have been made by the court between Schreiner and Haines and Hay, but apparently it was considered that the misconduct of all or either of them was imputable to the corporation.

We are satisfied from the evidence as indicated in the petition and answer herein that the employee was injured by reason of the serious and wilful misconduct of Taylor. It is not necessary to occupy space here with a review of that evidence. We are further of the opinion that Taylor was an executive or managing officer or at least a general superintendent of the corporation for the purposes of the construction work of which Taylor had charge; that is to say, that he was a "general superintendent" within the meaning of section 6 (b) of the Workmen's Compensation, etc., Act of 1917.

The petition for writ of review is denied.

Houser, J., and York, J., concurred.