[Civ. No. 6720. First Appellate District, Division One.—July 12, 1929.]

J. A. CLAREY, Respondent, v. SECURITY PORTLAND CEMENT CO., INC., Appellant.

Sheran, Alvord & Hearn and Thomas H. Hearn for Appellant.

W. P. Butcher for Respondent.

THE COURT.—An action was brought by the plaintiff against appellant corporation, which is engaged in the manufacture of cement, to recover the sum of $5,000, with interest.

The court found that the plaintiff on July 26, 1926, loaned the above sum to the appellant; that the latter in consideration thereof agreed to repay the same in monthly installments, commencing on August 1, 1926, at the rate of five cents per barrel of cement produced, together with interest at the rate of six per cent per annum, payable with each monthly installment of the principal sum. It was further found that appellant produced cement after August 1, 1926, and continued to do so from month to month; that it failed to pay any installment as provided by the agreement except the sum of $27.26, which was not the full amount due at

the rate of five cents per barrel for all cement produced, and did not include the agreed interest. The court further found the agreement to be without mutuality, uncertain and void and "that there was a failure of consideration on the part of said defendant." Upon its findings the court entered judgment against appellant for the full amount of the loan, with interest.

The following is the contract which appellant in consideration of the loan executed to the plaintiff:

"For and in consideration of loan of $5,000.00 the Security Portland Cement Co. Inc. agrees to pay a royalty of five cents per bbl. on all cement (commencing August 1st, 1926, and until paid), produced at their plant at Devore, San Bernardino county, California, until the full amount together with 6% interest shall have been paid. Payments on principal and interest on royalty account shall be paid monthly."

On December 13, 1926, appellant sent the following letter to the plaintiff:

"Dear Sir:—

"Below you will find statement of cement sold by barrels up to December 1st, 1926. There was very little cement manufactured in the month of October and so consequently it is included in November sales.

| Am't sold bbls. | Royalty per bbl. | Am't due Clarey |
|---|---|---|
| 545¼ | 5c | $27.26 |

"Trusting that this statement is satisfactory, we are," etc.

A second letter inclosing a check was sent by appellant on December 14, 1926, this letter being as follows:

"Mr. J. A. Clarey, Santa Barbara, Calif.

"Dear Sir:

"Herewith our check in amount $27.26 to cover royalties due you for cement production to December 1st. Trusting that this slight delay and fowarding this check has not inconvenienced you greatly, and assuring you that the next royalty check due you will be forwarded by the 10th of the month, and that also it will be larger due to our increased production,—

"Very truly yours," etc.

The last letter with the check was returned by the plaintiff, who wrote upon the letter the following:

"Mr. G. F. Sondrake (General Manager):

"I herewith return check 1230 and letter until things are cleared up."

So far as shown no other communications passed between the parties, and on December 15, 1926, the present action was commenced.

It appears that the plaintiff at or about the time when the loan was made was employed in some capacity in connection with the operation of appellant's plant. The capacity of the plant was from 150 to 200 barrels of cement per day, but the only evidence as to the amount of cement produced was the testimony of the company's manager. According to this evidence no cement was produced between August 1, 1926, and October 7, 1926, but between the latter date and the middle of December, 1926, the production was about 2,000 barrels. How much of this was produced prior to December 1, 1926, the evidence does not show. The witness also testified that the plant was shut down some time during December, 1926, and from then until the date of the trial on February 4, 1927, no cement was produced; and, further, that it was the intention of the appellant to erect a larger plant, plans for the procurement of the capital necessary being then under way.

The foregoing is practically all the evidence as to the condition of appellant company, the past production and its future prospects.

■ We find nothing uncertain in the terms of the agreement. It was clearly the intention that the defendant should pay each month a sum equal to five cents per barrel of cement produced during the preceding month, this amount to be applied first to the payment of interest at the rate of six per cent per annum, and the balance, if any, upon the principal of the loan.

■ Nor can the contention that there was a lack of mutuality be sustained. The contract was not founded upon mutual promises, and the doctrine of mutuality of obligation is consequently inapplicable (*Mathewson* v. *Fitch*, 22 Cal. 86; *Nevada Bank* v. *Steinmitz*, 64 Cal. 301 [30 Pac. 970]; *Chrisman* v. *Southern Cal. Edison Co.*, 83 Cal. App. 249 [256 Pac. 618]; *Noble* v. *Reid-Avery Co.*, 89 Cal. App. 75 [264 Pac. 341]). As said in Williston on Contracts, volume 1, section 140, page 314: "It is often stated as if it were

a requisite in the formation of contracts that there must be mutuality. This form of statement is likely to cause confusion, and, however limited, is at best an unnecessary way of stating that there must be a valid consideration. In unilateral contracts there is never mutuality of obligation; and in bilateral agreements, though it is necessary that there shall be such a promise on each side as will furnish valid consideration, to express the idea by saying that mutuality is necessary is sure to cause confusion with the use of the same word by courts of equity. . . . The particular error which is traceable to the misleading use of the word as a requirement for the formation of a contract is a tendency observable in some of the cases to hold a contract invalid because the obligation undertaken on one side is not commensurate with that undertaken on the other. . . . ''

While it is probable that the appellant produced less cement than was anticipated at the time the loan was made, nothing in the evidence supports the conclusion that there was a failure of consideration. ■ It is the rule that if one voluntarily puts it out of his power to perform a contract of this character he is immediately liable, though the time specified for performance has not expired (*Wolf* v. *Marsh,* 54 Cal. 228; *Bagley* v. *Cohn,* 121 Cal. 604 [53 Pac. 1117]; *Carter* v. *Rhodes,* 135 Cal. 46 [66 Pac. 985]). But here, so far as shown, no act of the kind was done or contemplated, and the defendant in good faith and with reasonable diligence was proceeding with its operations. ■ Subject to the above rule, an obligation which is to be performed upon the happening of a contingency does not mature until the occurrence of the stipulated event (*Hatha-way* v. *Patterson,* 45 Cal. 294; *McAfee* v. *Fisher,* 64 Cal. 246 [34 Pac. 811]; *Lynch* v. *Keystone Con. etc. Co.,* 163 Cal. 690 [126 Pac. 968]), and in the present case the production of cement was the contingency upon which depended appellant's obligation both as to the amounts of the installments to be paid and their maturity. ■ This obligation, however, being unilateral, a failure to pay an installment at maturity would not give the promisee the right to consider the contract repudiated and to recover payment in full contrary to its terms (*Flinn & Treacy* v. *Mowry,* 131 Cal. 481 [63 Pac. 724, 1006]). It may be, as found by the court, that more cement was produced between the date of the

agreement and December 1, 1926, than that stated in the letter from the defendant. The amount, however, the evidence leaves uncertain, and no finding thereon was made.

In view of the foregoing the conclusions of the trial court cannot be sustained, and the judgment is accordingly reversed.