[Civ. No. 8068. First Appellate District, Division Two.—December 29, 1931.]

H. M. DICKER, Respondent, v. ITALO–AMERICAN OIL CORPORATION et al., Defendants; ITALO–AMERICAN PETROLEUM CORPORATION et al., Appellants.

Norman T. Mason, J. Karl Lobdell, H. L. Watt, Spalding & Myers and Charles E. R. Fulcher for Appellants.

Abe Richman and Nathan M. Dicker for Respondent.

NOURSE, P. J.—Plaintiff sued in equity on an express contract for services rendered, charging fraud and concealment of assets. The cause was tried with a jury and plaintiff had a verdict which the trial court adopted and made findings in support of a judgment for plaintiff. The

defendant Italo-Petroleum Corporation of America alone appeals on typewritten transcripts.

The appeal is addressed solely to the question whether the evidence is sufficient to support the findings of fact. In this respect practically every finding is made the subject of attack. In stating the case we will incorporate the evidence most favorable to the plaintiff because our function as an appellate court is to determine whether the findings material to the judgment are sustained by competent evidence. Hence, we will disregard the conflicting evidence as well as the attacks upon those findings which are not material to the judgment. To avoid needless repetition of the evidence we will make such comments as seem pertinent throughout the statement of facts.

The Italo-American Petroleum Corporation (a California corporation) was incorporated March 15, 1924. The Italo-American Oil Corporation (a Nevada corporation) was incorporated June 22, 1926. The Italo-Petroleum Corporation of America (a Delaware corporation and the appellant herein) was incorporated May 14, 1928. We will hereafter refer to these corporations as the California, Nevada, and Delaware corporations, respectively. In the year 1926 E. P. Zanetti was a director, vice-president and general manager of the California corporation. At the same time J. P. Harper was employed by the California corporation to secure, by purchase and assignment, oil leases for the benefit of that corporation. When the Nevada corporation was formed in June of that year Zanetti and Harper became directors of that corporation. This corporation was formed by the officers and directors of the California corporation for the purpose of promoting the interests of the California concern. At about the time of the incorporation of the Nevada company, Zanetti and Harper, with the full knowledge and acquiescence of the entire board of directors of the California corporation, entered into a contract with plaintiff's assignor whereby it was agreed to pay him 5,000 shares of the Nevada corporation and one per cent of the gross value of all oil, gas and other hydrocarbon substances produced or saved from a ten-acre tract of oil land in the Signal Hill district known as the Wiley-Tobin lease. In consideration therefor plaintiff's assignor agreed to procure an assignment of said lease to such person or corporation

as Zanetti and Harper should designate. These services were performed in full accordance with the contract and an assignment was taken in the name of Harper at the instance and with the consent of the two corporations. Five thousand dollars was paid by Harper to the owners of the lease and no part of the agreed compensation was paid to plaintiff's assignor.

The lease was thereafter assigned to the Nevada corporation and accepted by its directors with full knowledge of the circumstances above outlined. Soon thereafter the lease was turned over to the California corporation without any consideration passing to the Nevada corporation, though the lease at that time was given a value by the parties of $250,000. At that time the California corporation reimbursed Harper for the $5,000 he had paid to the owners of the lease and assumed all rights and obligations under the lease, continuing to operate it at great profit until the fall of 1928 when all the assets of the California corporation were transferred to the Delaware corporation. Here it should be added that soon after its incorporation the Nevada concern was stripped of all its assets by the California corporation and allowed to die without ceremony.

The trial court found, with ample evidence to support the finding, that the transactions of these three corporations were designed to defraud creditors. The California corporation had seven directors. Five of these joined in the organization of the Nevada corporation, and, with six new men, became the directors of that corporation. The executive officers of the California corporation became the executive officers of the Nevada corporation and actually controlled its affairs. Both corporations maintained the same office in San Francisco. They met at the same time and at the same place. The business of the two boards was so closely interlocked that those directors who were called as witnesses were frequently unable to distinguish between the transactions. The organization of the Nevada corporation is conceded by appellant to have been effected by the directors of the California corporation for the purpose of working a fraud upon their stockholders. The conduct of its affairs as outlined in the evidence demonstrates that it was organized and operated with the design of defrauding its creditors as well.

Having taken all the assets of the Nevada concern the directors of the California corporation then organized the Delaware corporation, to which all the assets of the California corporation were transferred. The trial court found that the purpose of these transactions was to defraud the creditors of the Nevada and California corporations, and the soundness of this finding is not open to question. The trial court also found that the Nevada corporation was unable to respond to a judgment in favor of plaintiff and that the reason for that condition was the fraudulent transfer of its assets in the manner hereinbefore outlined.

■ The appeal presents no intricate question of law. Plaintiff relies on the well-settled rules of ostensible agency and ratification by the principal. The evidence is undisputed that Zanetti and Harper were the ostensible agents of the California corporation and that they were authorized by the directors of the California corporation to enter into the contract in suit for the use and benefit of the Nevada corporation. They were thus enabled to hold themselves out as the ostensible agents of the Nevada corporation and this was done with the sanction of the directors of both concerns. The evidence is likewise undisputed that the Nevada corporation accepted and retained the benefits of the contract with full knowledge of its terms. This evidence presents a complete case of ratification by a corporation of the acts of its officers and employees and it is not necessary to cite authorities upon the corporation's liability under such circumstances.

■ It is argued that the portion of the judgment awarding plaintiff the sum of $5,000 is unsupported because, (1) There is no evidence that the corporation commissioner had authorized the Nevada corporation to issue that amount of stock for that purpose, and, (2) there is no evidence that the actual value of the stock was $1 a share. Direct evidence was not necessary on either point. If permission was not obtained to issue the stock it was because the corporation had disposed of all its assets and thus made performance of the contract impossible. ■ But, aside from the question of the manner of proof, the rule is that when one voluntarily puts it out of his power to do what he has agreed to do, he breaks his contract, and is immediately liable to be sued therefor (*Carter* v. *Rhodes,* 135 Cal. 46, 48

[66 Pac. 985]), and it is conceded here that the Nevada corporation did do that. ■ As to the second point the rule is that, in the absence of evidence, the par value of corporate stock is *prima facie* its actual value (*Peek* v. *Steinberg*, 163 Cal. 127, 134 [124 Pac. 834]). Hence the burden was on appellant to show the actual value of the Nevada stock if it claimed that the par value was not the true value, and this proof was not made.

■ Having thus established the liability of the Nevada corporation upon the contract the respondent offered evidence tending to show that this corporation had been formed at the instance of the California corporation for the purpose of defrauding the creditors of both and that the subsequent transfer of all the assets of the Nevada corporation to the California corporation without consideration was made for the same purpose and with full knowledge of the liabilities of the former. The trial court found accordingly upon sufficient and competent evidence, and these findings are likewise attacked. But herein the point is not that the evidence of the circumstances surrounding these transactions does not support these findings. The point is that the knowledge of these circumstances must have been obtained while the directors were acting for the Nevada corporation and, hence, that such knowledge may not be imputed to the California corporation, though the directors of the latter were the same individuals.

■ The accepted rule is that the knowledge which an official of one corporation gained as to facts and conditions while a like official of the predecessor of the said corporation is imputable to the latter. (*Blue Diamond P. Co.* v. *Industrial Acc. Com.*, 188 Cal. 403, 409 [205 Pac. 678], and cases cited.) We see no difference in principle from such a case and one where, as here, the knowledge was obtained when the corporate official was acting in a like capacity for the corporation which was organized and controlled by another.

■ With the liability thus transferred to the California corporation the trial court found that the Delaware corporation was organized for the purpose of taking over the *assets and liabilities* of the California corporation, and these transactions were completed in the latter part of the year 1928, when the California corporation was dissolved. We have not examined the evidence upon this issue because the

appellant has not attacked the finding in any other way than by the bare statement that the trial court "erred in making" it. Manifestly, if the Delaware corporation was organized by the directors and stockholders of the California corporation for the purpose of taking over the assets and of assuming the liabilities of the California corporation, in which respondent's claim was included, the judgment against the Delaware corporation was proper. Appellants' attack on the judgment is confined to the transactions preceding this transfer, and, as we are satisfied the evidence fully supports the findings covering those transactions, an affirmance of the judgment must follow.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 28, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 25, 1932.