[Civ. No. 2581. Fourth Dist.—May 15, 1941.]

ROY E. TILLIS, Respondent, v. WESTERN FRUIT GROWERS, INC. (a Corporation), Appellant.

McFadzean & Crowe for Appellant.

John Preston King for Respondent.

GRIFFIN, J.—Plaintiff and respondent instituted this action to recover damages against defendant and appellant corporation for breach of contract respecting the sale of respondent's crop of oranges. The case was tried without a jury and resulted in a judgment for respondent in the sum of $637.93, from which judgment defendant has appealed.

During the first part of November, 1937, respondent, an orange grower, owned about five acres of full-bearing trees on which there was growing a crop of Washington navel oranges. Both respondent and appellant corporation (which corporation was engaged in buying, shipping and packing citrus fruit) were quite familiar with the orange industry and market. On November 5, 1937, appellant, through its agent Mr. King, entered into an agreement of sale for the crop of navel oranges on the trees. This sale was consummated in writing on a printed form of contract prepared by appellant after the oranges had been inspected by the appellant. It reads in part as follows:

" . . . the Seller (respondent) has sold and the Buyer (appellant) has bought the entire crop of Wash. Navels now growing and maturing on Tillis Grove, . . .

"The Buyer agrees to pay the Seller 2½¢ per lb. up to and including Nov. 7th, 2¢ per lb. up to and including Nov. 12–1937. . . .

"It is further agreed that the picking and hauling are to be done at such time and manners as directed by the Buyer and the expense of the same is to be borne by the Seller . . .

" . . . Fruit to be paid on receipt of weights . . .

"Estimated boxes
    2000.''

The evidence discloses that on the 5th day of November, 1937, the date the sale was consummated, appellant harvested from the premises 14,190 pounds of oranges for which appellant paid respondent the contract price of 2½¢ per pound; that on November 5, 1937, the entire crop of oranges then growing upon the premises of respondent was ready and suitable for harvest and marketing, both as to sugar content and color; that on the 11th day of November, 1937, when the remaining oranges were still ready for harvest and marketing,

and would still pass the government test, the appellant refused to accept the balance of the oranges and informed the respondent that it would not accept any more of them. The appellant appears to have refused to take the balance of the oranges because the market price had broken. Immediately after such refusal, the respondent, in order to mitigate his damages, shipped and sold the balance of the oranges through a growers' exchange. The oranges sold through the exchange amounted to 50,423 pounds, and after deducting costs of picking, hauling, and selling, brought the sum of $370.53.

The court found from the arithmetic involved that respondent suffered damages in the sum of $637.93, being the difference, figured at 2¢ per pound, between the contract and the actual selling price of the oranges.

It is appellant's contention that under the contract it agreed to pay certain specified premium prices for that portion of the crop which the appellant could and did accept and use during the first week of the navel orange season in that year; but that the appellant did not thereby obligate itself to pay the same premium prices for any remaining portions of the crop which might have been, but which never were delivered to the appellant, and that it especially reserved the right to specify what portions of the crop it would accept and pay such premium prices for, by expressly reserving the right to direct the time when and the manner in which the fruit was to be picked and delivered to it; that this construction is amply supported by the language of the written contract in question and also by conversations between the parties, which conversations both preceded and followed the execution of the contract, and by the construction placed upon the contract by the parties thereto.

Appellant also contends that it was unduly limited by the trial court in not allowing extrinsic evidence of certain conversations as bearing on the intention of the parties as to the construction of the contract.

The record does disclose the fact that counsel for appellant endeavored to produce certain testimony to the effect that the contract was intended to be that a premium price was to be paid for early season fruit. With some emphasis the trial court denied the right of appellant to pursue such a course. However, the record does disclose that appellant was later allowed to bring out practically all the evidence sought to be

produced and also conversations both before, after, and surrounding the execution of the contract. Appellant cannot now be heard to complain of the trial court's ruling in this respect. (*Rapolla* v. *Goulart,* 105 Cal. App. 417, 421 [287 Pac. 562].) ▉ The contract clearly recites that "Seller has sold and Buyer has bought the entire crop of Wash. Navels now growing and maturing on Tillis Grove". There is no uncertainty about the words "has sold" and "has bought" and no ambiguity therein. These words certainly constitute a present sale and a consummated transaction. The grower sold and the buyer bought the *entire crop* of Washington navels. The crop could be and was sold upon the trees, after inspection and prior to the severance thereof. (*Jones* v. *California Growers & Shippers,* 182 Cal. 777 [190 Pac. 172] ; *Cutting Packing Co.* v. *Packers' Exchange,* 86 Cal. 574 [25 Pac. 52, 21 Am. St. Rep. 63, 10 L. R. A. 369].) ▉ Title to specific or ascertained goods under a contract of sale passes at such time as the parties to the contract intend it to be transferred. For the purpose of ascertaining the intention of the parties regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case. (Civ. Code, secs. 1738 and 1739.)

The contract further provides that the "picking and hauling are to be done at such time and manners as directed by the Buyer . . . " The evidence discloses that King, buyer for Western Fruit Growers, Inc., agreed with the respondent to secure the pickers (most of whom were men regularly employed by appellant corporation) to pick the oranges because he could "get it done cheaper". On November 5, 1937, 14,190 pounds were picked and paid for (less hauling and picking charges). No further picking was done or directed to be done by the buyer. On November 11, 1937, respondent went to appellant's place of business and inquired as to why the rest of the fruit had not been picked and he was told: "I am not going to pick any more of that stuff . . . the fruit market is broken." Respondent then sold the balance of the crop to the exchange. Appellant never demanded the balance of the fruit nor did respondent tender it to appellant.

▉ There was no legal duty resting upon respondent to tender the oranges to appellant, as contended by it, before a cause of action arose. Appellant could not remain silent and then profit by its own wrong. (*Danielson* v. *Neal,* 164

Cal. 748 [130 Pac. 716] ; *Howard* v. *Galbraith,* 13 Cal. App. 373 [109 Pac. 889].)

█ It is a familiar rule that where a contract has been reduced to writing the instrument measures the rights, duties and obligations of the parties. (*Harding* v. *Robinson,* 175 Cal. 534 [166 Pac. 808] ; Code Civ. Proc., sec. 1856.) The trial court had full knowledge of all the surrounding circumstances pertaining to the execution of the contract. In the absence of any charge of fraud, mistake or accident, the language of the contract being clear, explicit and certain, and not involving an absurdity, the trial court was justified in interpreting it and ascertaining the intention of the parties from the language thereof. (*Estate of Gaines,* 15 Cal. (2d) 255 [100 Pac. (2d) 1055] ; Civ. Code, secs. 1638, 1639 and 1647.) We see no extrinsic ambiguity in the contract before us. The findings of fact in this case are amply supported by the evidence.

█ It has been clearly held that if the buyer of a crop of fruit, as in the instant case, refuses to accept and pay therefor, the seller may sue him for breach of his contract and recover as damages the difference between the price agreed to be paid by him under the contract of purchase and that realized from the sale of the fruit in open market at current rates. (*Cutting Packing Co.* v. *Packers' Exchange, supra.*)

█ The trial court has fully considered the terms of the written contract. Its interpretation thereof is a reasonable one. Under these circumstances an appellate court will not interfere with such a construction. (*Tide Water Associated Oil Co.* v. *Curtin,* 41 Cal. App. (2d) 884 [107 Pac. (2d) 945].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.