[Civ. No. 14880. Second Dist., Div. One. Feb. 19, 1946.]

THOMAS D. WATSON, Appellant, v. ROTARY COLOR-PRINT, INC. (a Corporation), Respondent.

Oliver O. Clark and Robert A. Smith for Appellant.

Hone & Hone and Daniel W. Hone for Respondent.

YORK, P. J.—The trial court sustained a general and special demurrer to plaintiff's complaint without leave to amend on November 15, 1943, and notice thereof was given on November 16, 1943. On July 31, 1944, plaintiff filed his notice of motion to vacate the order sustaining the demurrer and for leave to file an amended complaint. Such motion was denied on August 9, 1944, on the ground that the proposed amended complaint did not state a cause of action on either of the two counts therein alleged, whereupon judgment of dismissal was filed and entered. This appeal is prosecuted by the plaintiff from such judgment of dismissal and also from the order denying permission to file his amended complaint.

The action is one for declaratory relief and for damages, the complaint alleging a written lease and agreement, dated January 2, 1940, running for a period of two years from December 20, 1939, subject to the right of either party to cancel the same upon 180 days' written notice. By the terms of the lease defendant was to print plaintiff's newspaper publications "of the same type and kind as those now being published" weekly or semiweekly, and "In the event that any such publication is published daily, or any other material change made from present practices, mutual agreements satisfactory to both parties shall be entered into regarding price or other changes which may be required by reason of such changes." It was alleged in the complaint "IV. That at the time of entering into said lease and said agreement, as well as for sometime prior thereto, it was the purpose, understanding and agreement that said plaintiff, as first party in said agreement, was the sole owner of the Glendale Star and associated newspapers, then being published weekly or semiweekly in the City of Glendale, California, and circulated therein and in the surrounding territory, and that plaintiff at that time had a composing room with all necessary machinery for the composing of his publications, and that plaintiff was desirous of securing a press and stereotyping machinery

on or near his premises for the printing of his publications, and that the defendant . . . as second party, was the owner of a twenty-four (24) page duplex tubular printing press and all the necessary stereotyping equipment that can be used for said purposes, and that said defendant was desirous to have said equipment installed at or near the plant of plaintiff for the purpose of printing said first party's publications, as well as doing such other printing of publications and miscellaneous printing as said second party may desire; and that at said times aforesaid, it was the purpose, understanding and agreement that during the term of said lease and said agreement, the Glendale Star or its successor, and any other publication published by first party, shall be printed by said second party, and that second party was to furnish the press work, the paper, and the ink; and that at said times it was also the purpose, understanding and agreement between the parties to said contract, and was well known to second parties that first party, plaintiff herein, was by entering into this said lease and agreement preparing to and was to publish, in addition to his established papers, a daily newspaper, and that plaintiff was making available said space mentioned" in said lease and agreement, "so that he could publish those already established and the daily then to be started, and that plaintiff was in need of said equipment and service from defendant so that he could publish same."

The complaint also alleges breach of the agreement by defendant on June 5, 1940, and that plaintiff had been substantially damaged by reason thereof.

Incorporated in the complaint were copies of two communications dated June 5, 1940, signed by defendant in which it notified plaintiff of its election to cancel the agreement because of plaintiff's breach thereof in that he had failed to pay for the work of printing his publications as specified by the terms of said agreement. Accompanying said notices of cancellation were two other communications (also set out *in haec verba* in the complaint) by which defendant offered to continue to print plaintiff's publications from day to day until further notice "at the prices and on the conditions heretofore prevailing, save and excepting that payment therefor shall be made in advance prior to the commencement of work thereon each day; such payment to be made in cash at Glendale."

Article 10 of said agreement provided that "Neither party

shall be responsible to the other for any failures or delays hereunder due to the elements, fire, earthquake, acts of God, labor disturbances, shortages or inability to obtain labor or materials, or any other like or unlike cause hindering performance hereunder by the respective parties in accordance with their usual practices. *In no event shall either party be responsible to the other for consequential damages."* (Emphasis added.)

With respect to said clause of the agreement, it was alleged in the complaint, in part, as follows: "That said paragraph 10 was intended and agreed to refer to the damages only such as are set forth in the said paragraph and not to the entire instrument or damages for the breach thereof by defendants. That said provision above set forth was attempted to be put into said written contract as Paragraph 10, but that in writing said written contract, it was by mutual mistake of the plaintiff and the defendant, or by the mistake of plaintiff and fraud of the said defendant in concealing its knowledge thereof, said agreement did not embody the actual provision as agreed upon, but said provision failed to carry out the intent and purpose of the last sentence therein and omitted therefrom the words *'that might arise by reason of the things set forth in this paragraph.'* " (Emphasis added.)

In his prayer for relief, appellant seeks a judicial declaration of the rights of the parties under the contract, and also damages in the aggregate sum of $210,000, of which amount $100,000 is for general damage and the balance for special damage suffered by him.

Appellant urges that the complaint herein states a cause of action, if the agreement can be interpreted "so as to give to the term 'consequential damages' the meaning as understood and intended by the parties at the time of contracting." Also, that the last sentence of paragraph 10 should be interpreted to mean that exemption from responsibility for consequential damages applies only if such consequential damages are the result of acts of God or the other causes enumerated in the preceding sentence of said paragraph.

An examination of the complaint and the exhibits attached thereto discloses that the agreement of January 2, 1940 (Exhibit A) was the result of many weeks of negotiation between the parties thereto, Exhibit B having been drawn on the . . . day of November, 1939, and Exhibit C bearing the date of December 5, 1939.

"It is a familiar rule that where a contract has been reduced to writing the instrument measures the rights, duties and obligations of the parties. (*Harding* v. *Robinson,* 175 Cal. 534 [166 P. 808]; Code Civ. Proc., sec. 1856.) . . . In the absence of any charge of fraud, mistake or accident, the language of the contract being clear, explicit and certain, and not involving an absurdity, the trial court was justified in interpreting it and ascertaining the intention of the parties from the language thereof. (*Estate of Gaines,* 15 Cal.2d 255 [100 P.2d 1055]; Civ. Code, secs. 1638, 1639 and 1647.) We see no extrinsic ambiguity in the contract before us." *Tillis* v. *Western Fruit Growers, Inc.,* 44 Cal.App.2d 826, 831 [113 P.2d 267].

The complaint here under consideration alleged that "in writing said written contract, it was by mutual mistake of the plaintiff and the defendant, or by the mistake of plaintiff and fraud of the said defendant in concealing its knowledge thereof, said agreement did not embody the actual provision agreed upon, but said provision failed to carry out the intent and purpose of the last sentence therein and omitted therefrom the words 'that might arise by reason of the things set forth in this paragraph'." However, appellant made no further attempt to allege fraud or mistake in either his original complaint or his proffered amended complaint, and has apparently abandoned such theory, because in his reply brief he makes the statement: "This action does not rest upon fraud. It rests upon the contract properly interpreted in accordance with the intentions of the parties as permissibly determined and the respondent's wilful breach of its obligations under that contract."

In view of the foregoing, a reasonable interpretation of paragraph ten of the agreement would appear to be that the parties intended to waive responsibility for consequential damages.

In his closing brief, appellant contends that the damages he seeks to recover are not all consequential damages, to wit:

"Clearly the rental which plaintiff obligated himself to pay in order to enable him to carry out his part of this contract and which became, as alleged, a total loss in the sum of $5,700.00, is a direct and not an indirect damage flowing from respondent's breach and as such is not within any definition of exclusion.

"In the same class is the $1,350.00 which respondent agreed to pay to plaintiff at the rate of $75.00 per month for its use of a portion of the premises controlled by appellant. This loss is a direct and not an indirect loss.

"In the same class is the loss to appellant of $22,720.00 representing the value at $5.00 each of 4,544 subscriptions to appellant's publications. The loss of these subscriptions, as alleged, is a loss resulting directly from the defendant's breach and not indirectly, and in no sense is it a consequential damage even in the absence of a definition of that term as alleged, by the parties."

In his allegation with respect to respondent's cancellation of the lease contrary to the terms thereof, appellant sets out in *haec verba* the four letters which he received from respondent dated June 5, 1940. In these communications respondent specifically states that the reason for the cancellation of the agreement on its part was the failure of appellant to pay for the printing of his publications pursuant to the terms of the agreement. However, these letters, as heretofore related, contained an offer by respondent to continue to print appellant's publications for cash. Therefore, the complaint affirmatively shows that respondent agreed to continue printing provided it was paid. Hence, any damage sustained by appellant resulted from his being required to pay cash in lieu of the credit extended by the terms of the agreement. The complaint does not allege a causal connection between respondent's refusal to print unless paid and appellant's loss with respect to rentals or his daily publication. As to this last item, the complaint affirmatively shows that no contract for the printing of appellant's daily was ever made as provided in the agreement, therefore, appellant's claim for damages for rentals and for loss of subscriptions must be denominated consequential and not recoverable. And this is true, even if respondent's failure to pay such rental and to print such dailies was without valid excuse.

An analysis of both the original complaint and the proffered amended complaint reveals that appellant failed to state a cause of action for breach of contract by respondent and that the trial court properly sustained the demurrer to the original complaint and committed no error when he denied appellant's application for permission to file the amended complaint.

For the reasons stated, the judgment of dismissal is affirmed. The appeal from the order denying application to file the amended complaint is dismissed.

Doran, J., and White, J., concurred.