[Civ. No. 6064. Fourth Dist. Apr. 25, 1960.]

BEN POST, Appellant, v. W. C. JACOBSEN, as State Director of Agriculture, Respondent.

298

L. Kenneth Say, for Appellant.

Stanley Mosk, Attorney General, Marcus Vanderlaan and John Fourt, Deputy Attorneys General, for Respondent.

COUGHLIN, J.—This is a proceeding in mandamus to review an administrative order of the State Director of Agriculture.

Petitioner is a farm produce dealer, licensed to act as such under the Agricultural Code (Agr. Code, § 1263). On June 5, 1958, he entered into a written contract respecting the purchase of Santa Rosa plums from a grower by the name of John Luisi. On the preceding day, pursuant to previous ar-

rangements, Fred Reynolds, a fruit buyer employed by petitioner, Jay Seaman, a fruit broker, and Luisi, the grower, went to the latter's plum orchard to inspect the plum crop which was the subject of a prospective sale. Luisi had offered to sell his plums for $150 a ton. During the inspection it was noted that the fruit had been damaged by hail and was infested with San Jose scale. The parties estimated the scale infestation at 25 per cent. Thereafter, the results of this inspection were transmitted to petitioner and it was determined that the asking price of $150 per ton should be countered with an offer of $115 per ton, reflecting a 25 per cent reduction to offset the hail damage and scale infestation. This information was communicated to Luisi by Seaman and the written agreement of June 5th was an eventuality.

The printed form of contract, which had been drafted by petitioner, was used; blank spaces were filled in by hand printing; and some of the printed matter was stricken out. Material parts of the executed document, in which Luisi was referred to as "Grower" and petitioner as "Shipper," provided as follows (italics indicate handprinted matter):

"Grower hereby agrees to sell to Shipper, and Shipper hereby agrees to purchase from Grower, *80 tons more or less Santa Rosa plums on trees* growing or to be grown during the season of *1958*, . . . Grower . . . agrees that he will neither encumber nor permit any liens or claims to attach to or affect his ownership of said fruit. *Grower agrees to do all work (farm) until crop is harvested . . . Buyer to pick & haul at own expense.*

"Shipper agrees, after acceptance of said fruit, to pay Grower *$115.00 ton on trees—$2000.00 adv.—balance to be paid 5 days after crop is harvested.*"

Stricken from the printed form was the following provision:

"Title to the fruit covered under this contract shall pass from Grower to Shipper as said fruit is delivered to Shipper's packing house and accepted for purchase by Shipper."

Petitioner paid the $2,000 advance on the purchase price as agreed. Picking and delivery of the fruit commenced on June 13, 1958. On June 16, 1958, an inspector from the Fresno County Agricultural Commissioner's office graded the picked fruit and determined that 44.4 per cent thereof was affected with San Jose scale, hail damage or scarring; predominantly scale damage. By order of petitioner, picking was discontinued on June 20. Up to this time 39.44 tons of

fruit had been picked and delivered to petitioner's packing house.

On June 22, Luisi went to petitioner and offered to compromise his claim by the acceptance of a cash payment and a release of the fruit still on the trees. This offer was rejected. A subsequent offer reducing the amount of the cash payment was also rejected. Petitioner did not attempt to rescind the agreement. Forty-eight tons of fruit remained on the trees. Efforts by Seaman, on behalf of Luisi, to sell the remaining fruit failed because petitioner refused to release the same and also because the plums were too ripe.

Other than the $2,000 advance, petitioner made no payments under the contract. On June 27, 1958, Luisi filed a complaint with the State Department of Agriculture charging petitioner with a violation of section 1269, subdivisions (1)(b) and (1)(j) of the Agricultural Code, and asking that petitioner's license be suspended or revoked. The matter was set for hearing on July 16, 1958. A hearing was held on that date, before a hearing officer; all parties were represented by counsel; testimony was introduced; and the matter was submitted. On October 21, 1958, the Director of Agriculture executed an instrument entitled "Specification of Facts and Order" in which he found that petitioner had purchased a crop of plums from Luisi, estimated at 80 tons, more or less, at a price of $115 per ton on the trees; that petitioner picked and received 78,882 pounds of these plums and thereafter refused to take delivery of the remainder and refused to make payment in full in accordance with the terms of the contract. From these facts the director concluded that petitioner had violated section 1269, subdivision (1)(b) of the Agricultural Code by having failed to make payment in full for farm products purchased, and also that he failed and refused to accept farm products in accordance with the terms of his written contract. Based on the foregoing, the director issued an order suspending petitioner's license for a period of three months. Thereafter, petitioner instituted these proceedings to set aside the aforesaid order; the matter was submitted to the trial court upon the written transcript of the proceedings before the hearing officer; that court found that the weight of the evidence supported the findings of the director; that the contract of sale immediately passed title to the existing crop of plums; that petitioner violated section 1269, subdivision (1)(b) of the Agricultural Code in failing to pay in full the amount specified in the contract, and violated section 1269, subdivision (1)(j) of that code in refusing to accept the complete crop

purchased; judgment was entered on these findings denying a peremptory writ of mandate and affirming the order of the Director of Agriculture. From this judgment petitioner appeals.

Although the issues urged upon the trial and argued in the briefs before this court exceed the scope of inquiry presented by this proceeding, counsel for both parties, at the time of oral argument herein, recognized this fact and agreed that the decisive issues on appeal involve only a determination as to whether there was a violation of the aforesaid sections of the Agricultural Code. Whether or not Luisi can recover damages from petitioner and, if so, how much, are not questions for determination in these proceedings.

Section 1269 of the Agricultural Code, in part, provides as follows:

"(1) The director . . . may revoke or suspend any license, as the case may require, when after a hearing as herein provided, he is satisfied of the existence of any of the following facts, the existence of which is hereby declared to be a violation of this chapter:

"(b) That the . . . licensee, has failed or refused . . . to pay for farm products received, within the time and in the manner required by this chapter.

. . . . . . . . . . . . . .

"(j) That the licensee has rejected, without reasonable cause, or has failed or refused to accept, without reasonable cause, any farm products bought or contracted to be bought from a producer by such licensee . . ."

Subparagraph (1)(b) quoted above, refers to the following provisions in section 1272 of that code: "Every dealer must pay for farm products delivered to him or it at the time and in the manner specified in the contract with the producer, but if no time is set by such contract, or at the time of said delivery, then within thirty days from the delivery or taking possession of such farm products."

It is well established that a proceeding in mandamus to review the administrative order of a state officer pursuant to the provisions of section 1094.5 of the Code of Civil Procedure confers upon the trial court authority to exercise its independent judgment on the weight of the evidence; on an appeal from its decision in such a proceeding all conflicts in the evidence must be resolved in favor of the prevailing party, and if there was any substantial evidence before that court, contradicted or uncontradicted, which

supports that decision the appellate court must accept the same as true. (*Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20].)

 Basic to the decision of the trial court was the finding that title to the plum crop had passed to petitioner upon execution of the contract of sale. Rules respecting the passage of title under contracts of sale are prescribed by the Civil Code which provides:

(1) "Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred;"

(2) "For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of the trade and the circumstances of the case;" and

(3) "Unless a different intention appears, . . . where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed." (Civ. Code, §§ 1738 and 1739.)

These rules have been applied in a number of cases involving the sale of farm products. (*Brietengross* v. *Theodore Krumm, Inc.,* 35 Cal.App.2d 639 [96 P.2d 370]; *Tillis* v. *Western Fruit Growers, Inc.,* 44 Cal.App.2d 826 [113 P.2d 267]; *Aiello* v. *Sliskovich,* 72 Cal.App.2d 39 [163 P.2d 768]; *Johnson* v. *Besoyan,* 85 Cal.App.2d 389 [193 P.2d 63].) The contract in question contains no express provision respecting the time when title should pass. To the contrary, the printed form provision that title should pass when the fruit was delivered to the shipper's packing house was stricken out. There is no evidence respecting the usages of the trade under the circumstances. The contract provided that the crop was sold on the trees; the time for delivery was not fixed; the property was in a deliverable state; the buyer went upon the premises, picked approximately 39 tons of fruit and hauled it to his packing plant; after learning of the increase in scale infestation, although stopping further picking, he refused to release the fruit in order that the grower might sell the same. These facts support the code rule respecting intention to pass title, i.e., that title to specific goods in a deliverable state passes to the buyer at the time an unconditional contract for the sale thereof is made. In *Johnson* v. *Besoyan,* 85 Cal.App.2d 389,

392-393 [193 P.2d 63], the court, in passing upon the sufficiency of the evidence to establish passage of title, made the following observation which is pertinent to the case at bar:

"The most convincing evidence of an intention to pass immediate title is the uncontradicted evidence showing that defendants on July 14, 1945, entered the patch and harvested about 13 tons of melons. If they did not then consider themselves the owners of the melons they have left unanswered the pertinent question of what they were doing on the property of others harvesting a crop that did not belong to them. They either believed they were the owners of the melons or they were guilty of unwarranted trespass."

The conduct of the parties in the instant case, after discovering that 44 per cent of the fruit was affected by scale infestation and scarring, supports an inference that they believed the buyer was the owner of the remaining fruit on the trees, otherwise the request of him, and his refusal, to give a release of that fruit would not have been a matter of mutual concern. At the time the contract was entered into no further act on the part of the seller was required before delivery; the plums were then in a deliverable state; the provision therein requiring Luisi to do all necessary farm work until the crop was harvested did not change that state; picking commenced eight days later. Doing the farm work in question was not a condition precedent to delivery and the contract provision with respect thereto did not require a finding that the parties intended that title should not pass at the time the contract was made. (*Johnson* v. *Besoyan*, 85 Cal.App.2d 389 [193 P.2d 63] ; *Brietengross* v. *Theodore Krumm, Inc.*, 35 Cal. App.2d 639 [96 P.2d 370].) The conclusion of the trial court that petitioner was the owner of the plum crop at all times since execution of the contract is adequately supported by the evidence.

Nevertheless, petitioner claims that the time for payment had not accrued under the terms of the contract which provided that: "Shipper agrees, after acceptance of said fruit, to pay Grower *$115.00 ton on trees—$2000.00 adv.— balance to be paid 5 days after crop is harvested.*" (Italics indicate handprinting.)

The answer to this contention lies in the finding that petitioner failed, without good cause, to complete the harvest of the crop. A party may not benefit by his own wrong. (Civ. Code, § 3517.) Petitioner was not entitled to delay accrual of the payment time by his wrongful act and then advance such

delay as a defense to his alleged misconduct in not paying for the fruit purchased by him. In support of his contention, however, he claims that payment was not due as it was impossible for Luisi to perform under the contract because the presence of the San Jose scale rendered the plums valueless, and cites *Mineral Park Land Co.* v. *Howard,* 172 Cal. 289, 291 [156 P. 458, L.R.A. 1916F 1], in support of his position. This claim is without merit. Title to the fruit passed to him when the contract of sale was made. He bargained for and obtained the crop in its then condition, at his price of $115 per ton. If the fruit was infested to a greater degree than petitioner estimated, or if the infestation increased after purchase, Luisi had performed his part of the agreement and was entitled to payment, abiding only the time therefor, which had been fixed at a date five days after harvest. The cited case is not controlling; it did not involve a sale, but a contract containing executory provisions the performance of which depended upon the existence of a subject matter which, for all practical purposes, did not exist and rendered the contract impossible to perform. In the case at bar, the contract did not provide that petitioner should pay only for the fruit which he harvested; he purchased all of the fruit on the tree; title thereto passed to him forthwith; what he did with the fruit thereafter was his concern; he was obliged to pay for all of the fruit; under the contract the fact of harvesting fixed the time of payment but not the obligation of payment. (*Lassing* v. *James,* 107 Cal. 348, 357 [40 P. 534].) Moreover, the evidence supports an implied finding that it was not impracticable to harvest the fruit. Substantiation of this fact lies in the contention made by petitioner in his brief that Luisi should have mitigated damages by selling the fruit which petitioner refused to accept. When petitioner indicated that he did not intend to harvest and refused to pay the amount agreed upon, under well-settled principles, his obligation to pay accrued forthwith. (*Carter* v. *Rhodes,* 135 Cal. 46, 48 [66 P. 985]; *Clarey* v. *Security Portland C. Co., Inc.,* 99 Cal.App. 783, 787 [279 P. 483]; *Dicker* v. *Italo-American Oil Corp.,* 119 Cal.App. 451, 455 [6 P.2d 550]; *Rudolph* v. *Johnson,* 127 Cal.App. 451, 460 [16 P.2d 152].)

The finding of the trial court that petitioner failed, without just cause, to complete the harvest and accept all of the fruit which he bought is sustained by the evidence. He had purchased the crop; it was his; he knew its condition at the time of purchase; if the condition changed after purchase to

his detriment, the loss was his; and he was not entitled to reject the fruit. It follows that he may not urge such rejection as a reason for nonpayment, and the conclusion that he refused to make payment in accord with the requirements of the statute was proper.

The contentions made by petitioner respecting the amount of damages sustained by Luisi, as conceded at the time of oral argument, are not pertinent to a decision upon the charges filed with and the order made by the Director of Agriculture and need not be considered in this opinion.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.